**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

RECEIVED

2013 NOV 27  A 8: 12

CHRIS E. TURNER,                          )
        **Plaintiff,**                    )
                      )
      **v.**                               )
                      )
                      )
CITY OF AUBURN, a municipality            )
of the State of Alabama; LEE LAMAR,       )
individually, and as Chief of the         )
Fire Department of the City of Auburn;    )
RODNEY HARTSFIELD, individually, and)
as Deputy Chief of the Fire Department    )
of the City of Auburn; BILL HAM, JR.,     )
individually, and as Mayor of the City of )
Auburn; STEVEN A. REEVES,                 )
individually, and as Human Resources      )
Director of the City of Auburn;           )
BILL JAMES, individually, and as          )
Public Safety Director of the City of     )
Auburn; CHARLEY DUGGAN, JR.               )
individually, and as City Manager  of the )
City of Auburn ;                          )
            **Defendants.**                )

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Civil Action No.: 3:13-cv-863-WHA-SRW

**JURY TRIAL**
**DEMANDED**

## COMPLAINT

    **COMES NOW**, Plaintiff, Chris E. Turner, and by and through his undersigned counsel, hereby respectfully complains against the defendants

1

City of Auburn, Lee Lamar, Rodney Hartsfield, Bill Ham, Jr., Steven A. Reeves, Bill James and Charley Duggans, and alleges as follows:

## I

## JURISDICTION

1.     This Court has jurisdiction over this action under 28 U.S.C. Sections 1331, 1343(3) and (4). The matters in controversy arise under 42 U.S.C. 1981, as amended; 42 U.S.C. 1983, as amended; Title VII of the Civil Rights Act of 1964, as amended by the 1991 Civil Rights laws, and the First and Fourteenth Amendment of the United States Constitution.

## II

## VENUE

2.     Venue properly lies in Middle District of Alabama Eastern Division, pursuant to 28 U.S.C. Section 1391(b)(2), because the events giving rise to this cause of action occurred in the City of Auburn, Alabama, located in Lee County, Alabama, which is in the  Middle District of Alabama, Eastern Division.

## III

## PARTIES

3.     Plaintiff, Chris E. Turner, a citizen of the United States and resident of the State of Alabama, is a 48 year old male African-American. He has been employed by the Defendant City of Auburn since 1987, when he began work as a part-time firefighter. Since 1991, as a result of legal action, Plaintiff has been a full-time firefighter employee of Defendant City of Auburn. He is presently employed as a Firefighter II.

4.     Plaintiff Turner further avers that his employment first became

2

full-time pursuant to a 1991 legal settlement agreement, resulting in an order entered in "**Hammock v. The City of Auburn, Alabama, et al.**", CV-87-690-E, wherein the City of Auburn hired Plaintiff as a full-time firefighter, pursuant to the afore-mentioned order.

5.   Defendant City of Auburn is an employee within the meaning of 28 U.S.C. 2000, et seq. All other defendants are citizens of the United States and residents of the State of Alabama.

6.   Defendant Lee Lamar (hereinafter "Lamar") has been Deputy Chief of the City of Auburn Fire Department, since approximately 2003. Said defendant is now Chief of the City of Auburn Fire Department, and has been so since July 2008. He has had input and significant authority as a decision-maker with regard to the facts set forth herein. He is named both in his official capacity and his individual capacity, the latter of which is because he is not authorized in his official capacity to violate the constitutional rights of the plaintiff.

7.   Defendant Rodney Hartsfield (hereinafter "Hartsfield") has been the Deputy Chief of the City of Auburn Fire Department since approximately January, 2009. He has had input and authority as a decision-maker with regard to the facts set forth herein. He is named both in his official capacity and in his individual capacity, the latter of which is because he is not authorized in his official capacity to violate the constitutional rights of the plaintiff.

8.   Defendant Steven A. Reeves (hereinafter "Reeves") has been the

Human Resource Director of the City of Auburn Fire Department since 1993. As part of his job responsibilities, defendant Reeves has been part of the decision-making process used to promote firefighters since 2006. Defendant Reeves has had input and authority as a decision-maker with regard to the facts set forth herein. He is named in both his official capacity and individual capacity, the latter of which is because he is not authorized in his official capacity to violate the constitutional rights of the plaintiff.

9.     Defendant Bill Ham, Jr. (hereinafter "Ham") has been the Mayor of the City of Auburn since approximately 2000. He has had input and significant authority as a decision-maker with regard to the facts set forth herein. He is named both in his official capacity and his individual capacity, the latter of which is because he is not authorized in his official capacity to violate the constitutional rights of the plaintiff.

10.    Defendant Bill James (hereinafter "James") has been the Public Safety Director of the City of Auburn since approximately 2001. He also has had input and significant authority as a decision-maker with regard to the facts set forth herein. He is named in both his official capacity and individual capacity, the latter of which is because he is not authorized in his official capacity to violate the constitutional rights of the plaintiff.

11.    Defendant Charlie Duggans (hereinafter "Duggans") is the City Manager of the City of Auburn at the time of the promotions identified and described herein. He also has had input and significant authority with regard to those promotions. He is named in both his official capacity and individual capacity, the latter of which is because he is not authorized in his official

4

capacity to violate the constitutional rights of the plaintiff.

## IV
## PREVIOUS LAWSUITS BY PLAINTIFF

**12.** Within the last two years Plaintiff has filed no other lawsuits in any state or federal court dealing with the same facts involved in this action, or otherwise relating to his employment in his capacity as a Firefighter II, with the Defendant City of Auburn. As discussed *infra*, previous lawsuits were filed in 1991 and in 2005. Said lawsuits were concerned primarily with racial discrimination, whereas the present action involves not only racial discrimination but also wrongful retaliation for having brought the previous actions. This case also involves a claim of a violation of Plaintiff's Fourteenth Amendment, in the context of a violation of plaintiff's First Amendment rights to freedom of speech and right of access to courts.

## V
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**13.** Plaintiff brings the claims set forth herein pursuant to Right to Petition Clause of the First Amendment of the Constitution of the United States under 42 U.S.C. §1983, and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States under § 1983. Plaintiff filed in 2011 and 2012 three complaints with the Equal Employment Opportunity Commission (EEOC) asserting race, age, and retaliation discrimination by the Auburn Fire Division in 2011-2012, which discrimination and retaliation has continued on into 2013. Plaintiff expects to shortly receive a right-to-sue letter for each claim from the EEOC, in Birmingham, Alabama and/or the Justice Department in Washington, D.C.

5

and will amend this Complaint immediately upon the receipt of said right-to-sue letter. However, it has been 2 years since the first EEOC charge was filed on December 7, 2011, almost that amount of time since the second EEOC was charge was filed on January 10, 2012, and one year since the third charge was filed on November 28, 2012, and Plaintiff cannot in good conscience wait for an overburdened and understaffed EEOC and Justice Department to take any longer, especially in light of statutes of limitations.

## VI

## FACTS

**14.** Plaintiff Turner avers that this lawsuit is primarily a challenge, on various legal grounds, to his non-promotion within the City of Auburn Fire Department to the position of "fire lieutenant", and even to the lesser position of "sergeant".

### A.

## MORE DISTANT CHRONOLOGICAL FACTS (1991-2005) SETTING FOUNDATION FOR PLAINTIFF'S PRESENT STATUS

(though admittedly outside statute of limitation)

**15.** Plaintiff has been a full-time employee as a firefighter in the Fire Department of Defendant City of Auburn since 1991. He is currently employed as a Firefighter II.[1] Plaintiff is certified to command fires until the

---

[1] On February 15, 1991, this Court ordered the Defendant City of Auburn to hire Plaintiff as a full-time firefighter. When he was hired, he was a probationary firefighter for one year. Plaintiff passed all the requirements and became a Firefighter I. He remained a Firefighter I for approximately seven years, and then was promoted to Firefighter II with no pay increase.

6

senior officer arrives at the scene, pursuant to his Command System Certification. Furthermore, plaintiff has certificates in Apparatus Operator/pumper; Apparatus Operator / Arial; Hazardous Materials Incident Commander; Building Construction For Fire suppression Forces Principle wood and ordinary construction; First Responder; Alabama Forestry Commission (brush fire training); National Wildlife/Urban Firefighter Safety Certification; ISI Safety; Commercial Drivers Licensing program; Firefighter Safety and Survival; Emergency Vehicles Operations Course and defensive driving training; as well as thirty-two (32) hours of secondary education in fire-fighting courses, plaintiff also has a plethora of other relevant certifications to complement his unblemished twenty two (22) years as a fire-station officer.

16.    Plaintiff has been an acting Station Officer since 1996, since he assumed supervisory responsibilities, as assigned, of all the fire stations in the City of Auburn. This included fire stations numbers 1, 2, 3, and 4. The job of the Station Officer is to manage a station when the Lieutenant is absent. In this position, the Station Officer must interact effectively with team members, senior officers and the public. The station officer must also instruct, plan, lead, communicate, be safe, manage and supervise. Plaintiff has had seventeen years of such experience in this position.

17.    The 1991 Settlement Agreement specifically provided that promotion to Team Leader did not have to be determined through an outside assessment center, such as was required for filling Lieutenants' and Captains' positions, for the reason that the Team Leader "position" is not a classification as such, but an additional responsibility of a permanent

Firefighter. The team leader position did provide the same pay and grade as that of Lieutenant.

18.   Plaintiff was qualified to be a Team Leader on August 23, 2005. Although qualified, plaintiff was denied the promotion, and the position was kept open, and eventually given to white firefighters.

19.   Thus, the City of Auburn has employed the term "Team Leader" to promote white Firefighters to a grade equal to that of Lieutenant (Team Leaders, however were not Lieutenants). Team Leader determinations were made in various ways, either by (a) appointment from the Fire Chief, (b) inside assessment by the Fire Chief, (c) appointments by the Public Safety Director, or (d) other Team Leaders, including some former Captains, and sometimes even by (e) city administrators giving promotions to team leaders by informing the permanent Firefighters of a promotion to Lieutenant pay grade (a raise of approximately three hundred dollars a month). These appointees, as stated above, were called Team Leaders, even though the term Team Leader is not an official classification.

B.

MORE RECENT CHRONOLOGICAL HISTORY (2005-2013)

20.   The following history, most of the dates of which are still outside the statute of limitations for litigation purposes, are nonetheless foundational and instructive for understanding plaintiff's present plight.

(a).   Until August 23, 2005, all promotions to Team Leader

8

were handled in the manner set forth in paragraph 18 above.

(b).    Prior to August, 2005, Plaintiff was "passed over" for promotion to team leader by Defendants approximately twenty times. In or about 1994, Plaintiff became eligible for the position of Team Leader. He never received a promotion. Usually, Plaintiff was told that the reason he didn't get the job was because he had interviewed poorly. Plaintiff was interviewed many times, often by the same persons, who continued to pass plaintiff over. Plaintiff was always given the same reason, namely that he had "interviewed poorly." During this same period of time, white-Firefighters, with less experience, training and communication skills, were continually promoted over Plaintiff.

(c).    Plaintiff's formal evaluations demonstrated that he possessed the requisite knowledge, skills, abilities, and other qualifications needed for successful job performance as a Team Leader. Plaintiff even performed in his current job, from time to time, the duties of Team Leader and also the duties of the higher position of Lieutenant. Plaintiff generally had a good performance appraisal.

(d).    In 2002, Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter the "EEOC") arising out of the failure of the City of Auburn to promote him to Team Leader. Plaintiff was offered the job of Team Leader during settlement negotiations through EEOC. However, the settlement was never finalized, and Plaintiff filed a lawsuit in 2005 against the City.

(e).    Following dismissal of the above lawsuit, the first Team Leader position to become available was on August 23, 2005.

(f).    However, the August 23, 2005 position was not filled

according to the customary procedure utilized in the past.

(g).   Further, following dismissal of the Plaintiff's 2005 lawsuit, defendant City of Auburn, on or about 2005, in order to continue passing over Plaintiff for promotion, implemented a "written test" for the *first* time for the Team Leader position.

21.   Plaintiff avers that this written test, in its 2005 origin, was racially discriminatory and designed to keep Plaintiff from getting the job, and said racial animus continues on up to the present date of November, 2013.

22.   Plaintiff avers that the written test was an unlawful "cut-off" test, divided into several parts, the first of which was a written part with no questions related to the requirements for the Team Leader position. Yet, failure to pass this initial written part "cut off", or barred, the applicant from taking the remainder of the examination, and thus becoming eligible for promotion as lieutenant.

23.   Petitioner further avers that specific pertinent features of the written portion of the assessment center test are still currently in effect, in the present year 2013. Said features reflect on petitioner's present claim as follows:

(a).   The written test was, and still is, designed for application to promotion to Lieutenant, not for promotion to the Team Leader position. Team Leaders are not Lieutenants, nor do they have the same duties. The 1991 Settlement Agreement clearly designated the distinctions between Team Leader and Lieutenant.

10

**(b).**   The application process was and still is, composed of five parts, as follows: (1) the written test, as hereinbefore described; (2) various scenarios; (3) writing skills; (4) fire tactics and (5) oral examination. As noted in paragraph 22 above, the written portion of the test, administered first, functioned as a "cut-off test," precluding the applicant from proceeding further if the applicant failed on the cut-off part of the test. The written exam was entitled "Examination 702 – Lieutenant's Exam." The written exam was graded by designated personnel of the City of Auburn, and the test results were shredded. Plaintiff was never allowed to see his test, after he took it in 2005. Said inability to see or evaluate the written test has continued on up to the present date, and this effectively prevents the Plaintiff from learning what he needs to improve his test performance.

24.   Plaintiff has been repeatedly advised by the City of Auburn, every time he has taken the test, that he failed the written examination, and would thus not be allowed to proceed to the remaining parts of the application process, none of which part carried the cut-off characteristics of the "written exam."

25.   Furthermore Plaintiff avers that all portions, except the 2005 written test, were "graded" by the City of Auburn, with no objective measurement or standard as to passage of failure. There was also no physical requirement in the testing process, notwithstanding that the 1991 Settlement Agreement provided for the same.

26.   In 2010, Plaintiff was even appointed as an acting lieutenant, and fulfilled all the duties and responsibilities of the same until he was

removed in December, 2012. Plaintiff's evaluations were all very good while in the acting lieutenant's position.

27.    Plaintiff also asserts that Defendant City of Auburn has continued on into the present date, 2013, and for the past two years before 2013 but within the statute of limitations, not to hire a black permanent Firefighter, a continuation of a practice existing since approximately 1996.

28.    Plaintiff also avers that the defendant City of Auburn, influenced by the other individual defendants, has only promoted two black Firefighters since 1996 and no other black firefighters have been promoted to the officer ranks in the last eighteen years. This manifests a consistent pattern and practice of avoiding the promotion of blacks.

29.    Plaintiff further avers that every African-American promoted since 1974 has received his promotion as the result of a lawsuit or pending lawsuit.

30.    Plaintiff avers that no black Firefighter has been hired since 1989 from the general public, and that all Firefighter positions have been filled through a program called the Student Program.

31.    Plaintiff also avers that ninety-nine plus percent of the Firefighters employed through the Student Program are white.

32.    Plaintiff also avers that Students in the student program are overwhelmingly trained by white officers, although Plaintiff has participated

in the training of students.

33.   Plaintiff also avers that, as of this 2013 date, and for the past two years, whites continue to be overwhelmingly dominant in the Fire Department, in violation of the 1991 Settlement Agreement, which states in Paragraph E, that the City may not discriminate in its hiring practices based upon race.

34.   Plaintiff also avers that he has been wrongfully denied consideration for promotion to lieutenant by the defendants in the City of Auburn fire department, even though he is fully qualified for said promotion, and has served as acting lieutenant on numerous occasions.

35.   Plaintiff avers that, since 2005, he has taken the written Assessment Center test numerous times, including most recently on or about October 14, 2013 for a sergeant's position. Plaintiff avers that his score of 73 ranked him below six white male firefighters, all of whom had much less time and experience on the job, yet all of whom were promoted to sergeant, while Plaintiff was not.

## VII

### Fire Lieutenant Job Description

36.   Plaintiff also avers that the following is a description for which he is well qualified, as reflected by his excellent service in said position on an acting basis.

(a).   **Job Summary** ( of Fire Lieutenant):

13

This position is responsible for managing and directing the human and physical resources of an assigned station of Fire Division personnel.

**(b).    Major Duties** (of Fire Leiutenant):

**(1). Directs the response to emergency fire and Emergency Medical Service calls. (25%):**

(a).    Acts as overall Incident Commander on smaller scale emergency incidents and incidents requiring only single company responses;

(b).    Commands the fire scenes until relieved by superior officer;

(c).    Assesses emergency situations; determines suppression methods; determines the need for additional personnel and equipment; preserves evidence of arson; ensures the security of a structure prior to leaving the scene;

(d).    Oversees and supervises the response of emergency apparatus to the location of the emergency and directs on-scene placement;

(e).    Monitors all firefighters on scene to ensure safety procedures are being followed and recognizes situations when firefighters may be in need of rescue;

(f).    Makes verbal and written analysis of activities involved in fire emergency situations; provides technical advice to firefighters for post-fire evaluations of the effectiveness of firefighting, rescue and EMS activities; and

**(2).        Performs supervisory duties (25%):**

(a).   Supervises, counsels, disciplines and evaluates the performance of assigned fire personnel;

(b).   Prepares and submits performance evaluations of assigned personnel;

(c).   Maintains personnel and payroll records;

(d).   Ensures adequate and proper staffing levels are maintained;

(e).   Oversees the provision of training to station personnel; maintains related training records;

(f).   Assists in the selection of new personnel;

(g).   Provides counseling and progressive disciplinary actions as needed;

(h). Assigns daily non-emergency shift details;

(i). Documents emergency and non-emergency incidents and accidents;   and


(3).   **Manages the station's equipment resources** (25%):

(a).   Supervises and ensures the proper cleaning and maintenance of all   division property, including stations, grounds and equipment;

(b).   Completes equipment maintenance work orders;

(c).   Coordinates repairs with outside vendors;

(d).   Directs post-emergency vehicle and equipment maintenance;

(e).   Ensures that all personnel have appropriate Personal Protective                Equipment and uniforms;

(f). Supervises the maintenance of equipment and facility maintenance records;

**(4).**      **Directs fire prevention activities** (15%):

(a).    Develops pre-fire plans for use in emergency situations; performs life safety inspections for the City of Auburn Codes Division;

(b).    Directs the performance of pre-fire inspections; ensures the completion of related reports;

(c).    Ensures that fire hydrants are properly maintained; directs personnel in the completion of flow tests;

(d).    Directs the provision of public education displays and seminars;

(e).    Conducts fire drills; and

**(5).**      **Performs related duties** (10%):

(a).    Coordinates and supervises station tours;

(b).    Demonstrates punctual, regular and reliable attendance;

(c).    Performance other related duties as assigned;

**(c).**      **Knowledge, Skills and Abilities (of Fire Lieutenant):**

**(1).** Knowledge of the geography and streets of the City of Auburn and surrounding areas, including hydrant locations, the layout and location of public utilities, and the location of potentially hazardous materials and substances;

16

**(2).**   Knowledge of current fire suppression and firefighting techniques, including related equipment;

**(3).**   Knowledge of fire record systems, communications equipment, fire computer applications and fire reporting procedures;

**(4).**   Knowledge of hydraulics as applied to pump operation and fire equipment;

**(5).**   Knowledge of all safety practices involved in fire suppression and firefighting;

**(6).**   Skill in making determinations as to the best course of action for fighting fires or responding to other emergency situations;

**(7).**   Skill in supervising, coordinating and evaluating the work of others;

**(8).**   Skill in remaining calm and carrying out duties with the recognition of the threat to life and property;

**(9).**   Skill in communicating with others, both orally and in writing;

**(10).**   Skill in solving problems under emergency conditions;

**(11).**   Skill in performing a wide variety of duties and responsibilities with accuracy and speed under pressure;

**(12).**   Ability to work cooperatively with others.

**(d). Supervisory Controls** (of Fire Lieutenant):

The Battalion Chief assigns work in terms of very general instructions. The supervisor spot-checks completed work for

compliance with procedures and the nature and propriety of the final results.

**(e). Guidelines** (of Fire Lieutenant):

Guidelines include National Fire Protection Association guidelines. Hazardous Material and OSHA manuals, standard operating procedures, pre-fire plans, City personnel policies, City of Auburn Core Values, general rules and regulations, and state and federal fire ordinances. These guidelines require judgment, selection and interpretation in application.

**(f). Complexity/Scope of Work** (of Fire Lieutenant):

**(1).** The work consists of varied duties in directing the emergency and non-emergency operations of an assigned station of Fire Division personnel. Stressful and life-threatening situations contribute to the complexity of the position.

**(2).** The purpose of this position is to direct station operations. Success in this position contributes to the safety of life and property.

**(g). Contacts** (of Fire Lieutenant):

**(1).** Contacts are typically with co-workers, vendors, representatives of other City departments, representative of other emergency response agencies, and members of the general public.

18

(2).    Contacts are typically to give or exchange information, resolve problems, motivate personnel, and provide services.

**(h). Physical Demands/Work Environment** (of Fire Lieutenant):

(1).    The work is typically performed while intermittently sitting, standing, stooping, walking, bending or crouching. The employee frequently lifts light objects weighing less than 24 pounds and heavy objects weighing 25 or more pounds. The employee climbs ladders, uses tools or equipment, distinguishes between shades of color, and utilizes the sense of smell.

(2).    The work is typically performed in an office, outdoors, and at dangerous fire scenes. The employee is exposed to noise, dust, dirt, grease, machinery with moving parts, contagious or infectious diseases, irritating chemicals, cold or inclement weather, and conditions associate with emergency and fire scenes. The work requires the use of protective devices such as masks, goggles, gloves, etc. as well as other specialized firefighting equipment.

**(i). Supervision Exercised** (of Fire Lieutenant):

This position has direct supervision over assigned Firefighters and Student Firefighters.

**(j). Minimum Qualifications** (of Fire Lieutenant)

    **(1).** Knowledge and level of competency commonly associated with a course of study related to the occupational field.

    **(2).** Experience sufficient to thoroughly understand the work of subordinate positions to be able to answer questions and resolve problems, usually associated with one to three years' experience or service in the rank below.

    **(3).** Possession of or ability to readily obtain a valid driver's license for the type of vehicle or equipment operated.

    **(4).** Ability to meet current requirements set forth by the Alabama Fire College and Personnel Standards Commission.

37. Plaintiff avers that he is well-qualified to meet, and has already met, the stringent standards required of a Fire Lieutenant set forth above. As asserted *supra*, plaintiff has been, on multiple occasions, tasked by the defendants to carry out and perform said duties, yet without the benefit of a pay raise, or promotion to the rank of lieutenant, due to his race. [2]

---

2 Empiracal, domentary evidence reflects that, on the following dates, Plaintiff Turner served as an acting lieutenant of the City of Auburn Fire Department, namely 12/20/2011, 12/28/2011, 12/29/2011, 12/31/2011, 1/12/2012, 1/13/2012, 1/29/2012, 2/04/2012, 2/06/2012, 2/09/2012, 2/18/2012, 2/24/2012, 3/13/2012, 3/15/2012, 3/16/2012, 3/17/2012, 3/18/2012, 3/19/2012, 3/22/2012, 3/31/2012, 4/06/2012, 4/12/2012, 4/13/2012, 4/15/2012, 4/16/2012, 4/18/2012, 4/24/2012, 4/28/2012, 4/29/2012, 5/05/2012, 5/06/2012, 5/09/2012, 5/12/2012, 5/21/2012, 5/25/2012, 5/26/2012, 5/30/2012, 5/31/2012, 6/02/2012, 6/05/2012, 6/09/2012, 6/12/2012, 6/14/2012, 6/17/2012, 6/18/2012, 6/21/2012, 6/22/2012, 6/26/2012, 6/29/2012, 7/05/2012, 7/17/2012,

**38.** Plaintiff also avers that the continued use by the defendants of the Assessment Center as a tool to prevent the promotion of plaintiff to either sergeant or fire lieutenant is not only racially discriminatory towards the plaintiff due to his black race, but also in retaliation against the plaintiff for his pursuing various legal initiatives, some successful, some unsuccessful, against the defendants in recent years.

## VIII

## CAUSES OF ACTION

### COUNT ONE : Race Discrimination

(In Violation of 42 USC § 1981 and 1981(a))

**39.** Plaintiff hereby repeats, re-alleges and incorporates by reference the preceding allegations of his complaint, and further avers that he is, and has been well-qualified to perform the necessary functions and duties of the job of Team Leader and Lieutenant in the defendants' City of Auburn's Fire Department, yet due to the actions and/or inactions of the

---

7/20/2012, 7/23/2012, 8/13/2012, 8/14/2012, 8/19/2012, 8/26/2012, 9/03/2012, 9/09/2012, 10/27/2012, 11/02/2012, 11/23/2012, 11/26/2012, 11/27/2012, 12/14/2012, 12/17/2012, 12/23/2012, 12/24/2012, 12/25/2012, 1/02/2013, 1/13/2013, 1/22/2013, 1/28/2013, 2/09/2013, 2/12/2013, 2/28/2013, 2/24/2013, 3/3/2013, 3/8/2013, 3/14/2013, 3/17/2013, 3/18/2013, 3/20/2013, 3/28/13, 3/29/13, 4/16/13, 4/19/2013, 4/22/2013., 4/25/2013, 5/5/2013, 5/17/2013, 5/16, 2013, 5/19/13, 5/28/2013, 6/03/2013, 6/24/2013, 6/27/2013, 6/30/2013, 7/03/2013, 7/12/2013, 7/15/2013, 7/27/2013, 7/28/2013, 7/30/2013, 8/17/2013, 8/18/2013, 8/23/2013, 9/01/2013, 9/02/2013, 9/10/2013, 9/16/2013, 9/17/2013, 9/19/2013, 9/20/2013, 9/25/2013, and 9/28/2013.

defendants' City of Auburn, and due to the individual defendants' discrimination against him on the basis of his black race, plaintiff has been wrongfully denied promotions to either fire lieutenant, and even to sergeant.

40.    Plaintiff avers that the defendants' City of Auburn and the individual defendants' have conspired to use the Assessment Center and its myriad, mysterious requirements of the Assessment Center to prevent plaintiff and other qualified blacks from being promoted to positions of leadership in Auburn fire department as fire lieutenant, or even to sergeant.

41.    Plaintiff avers that his many years of experience in the defendants' City of Auburn Fire Department and his so frequently occupying the position and responsibilities of team leader and lieutenant on an acting basis, have more than well enough qualified Plaintiff to be a fire lieutenant or sergeant.

42.    Plaintiff avers that the defendants' use of the Assessment Center as a tool for challenging promotions within the City of Auburn Fire Department has resulted not only in disparate treatment of blacks, including the petitioner, in the denial of promotions, but it has also caused a disparate impact (whether or not intent can be proven) that has already impacted upon blacks, including the petitioner, in the denial of promotions.

43.    Plaintiff avers that the defendants' above-described activities, have resulted in race discrimination in his employment and contractual relations with the defendants at City of Auburn, much to Plaintiff's

22

detriment and damage, in violation of both 42 USC § 1981 and 42 USC § 1981(a).

**44.**   Plaintiff avers that he has suffered extreme mental and emotional anguish as a result of the continuing belittlement and demeaning condescension resulting from the non-promotions to which he has been continually subjected during the past two years.

## PRAYER FOR RELIEF

Wherefore, premises considered plaintiff prays that this Honorable Court will grant plaintiff the following relief:

(a)   An order to defendants requiring that they permanently promote plaintiff to the position of fire lieutenant;

(b)   An order enjoining the defendant City of Auburn and the individual defendants from further discriminating against the plaintiff or any other blacks on the basis of their race, in either the hiring or promotion of fire fighters and employees of the City of Auburn Fire Department;

(c)   An order (incorporating a jury verdict) for damages in such an amount as may be just and reasonable under the facts and circumstances of this case;

(d)   An order (incorporating a jury verdict) for $500,000 in punitive damages as will be determined by a jury to send a message to the Auburn community, the State of Alabama, and the nation at large that such egregious race discrimination and retaliation as has existed at Auburn

23

should not be continued or perpetuated anywhere in the employment arena;

    (e)    Pay such attorney fees as this Court may deem appropriate;

    (f)    Pay the costs of court.

## COUNT TWO : <u>Unlawful Retaliation in Violation of First Amendment Rights to Freedom of Speech and Right of Access to Court</u>

**45.** Plaintiff hereby repeats, re-alleges and incorporates by reference the foregoing allegations in paragraphs 1 – 43 of the Complaint.

**46.** Plaintiff also avers that the Defendant City of Auburn and the individual Defendants named herein have been acting under color of state law in their wrongful actions and inactions described herein.

**47.** Plaintiff also avers that the wrongful actions and inactions of the Defendants described above were motivated, and significantly influenced, by an infringement on Plaintiff's First Amendment right to freedom of speech and First Amendment right of access to Courts, and, as such, it violated Plaintiff's rights under the U.S. Constitution.

**48.** Plaintiff has been damaged and injured by Defendant's violations of his First Amendment rights, in that he has been denied promotions to

Team Leader and/or Fire Lieutenant, which promotions should long ago have been granted to Plaintiff, based on his merit, performance, and ability.

**49.** Plaintiff further avers that said violations of his First Amendment rights also violated Plaintiff's rights under 42 U.S.C., 1983, due to the fact that the Defendants were acting under color of state law, in violating the Plaintiff's constitutional rights.

**50.** Plaintiff avers that he has suffered extreme mental and emotional anguish as a result of the continuing belittlement and demeaning condescension resulting from the non-promotions to which he has been continually subjected during the past two years.

## PRAYER FOR RELIEF

Wherefore, premises considered Plaintiff prays that this Honorable Court will grant Plaintiff the following relief:

(a)   A declaratory judgement declaring that the Defendants have violated Plaintiff's First Amendment rights to freedom of speech and right of access to courts; and

(b)   An order (incorporating a jury verdict) compensating Plaintiff for such damages, including loss of pay and mental anguish, as may be determined to be just and reasonable under the facts and circumstances of this case; and

(c)   An order (incorporating a jury verdict) for $500,000 in punitive damages to send a message to the Auburn community, the State of

25

Alabama, and the nation at large, that such an egregious violation of a citizen's constitutional rights under the First Amendment freedom of speech and right of access to court guaranties should not be tolerated or condoned in a civilized society; and

    (d)    An award of attorney fees under 42 U.S.C., 1988; and

    (e)    Payment of costs of court.

Respectfully submitted,

Christopher Turner

Julian L. McPhillips, Jr.
(ASB-3744-L74J)

OF COUNSEL:
**McPHILLIPS SHINBAUM, L.L.P.**
P.O. Box 64
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321    FAX